## DE LA RAMA STEAMSHIP CO., INC. *v.*
## UNITED STATES.

No. 368.   Argued January 15, 1953.—Decided February 2, 1953.

*Harold M. Kennedy* argued the cause for petitioner. With him on the brief were *Roscoe H. Hupper, Norman M. Barron* and *Hervey C. Allen.*

*Benjamin Forman* argued the cause for the United States.   With him on the brief were *Solicitor General Cummings, Assistant Attorney General Baldridge, Samuel D. Slade, Hubert H. Margolies* and *Cornelius J. Peck.*

Mr. Justice Frankfurter delivered the opinion of the Court.

This is a suit in admiralty against the United States, in which the libellant, petitioner here, sought to recover for its loss of the *M. V. Dona Aurora,* which was sunk

by enemy action on December 25, 1942. The basis of the libel was a war risk policy issued by the War Shipping Administration under the War Risk Insurance Act of June 29, 1940, 54 Stat. 689, 690, as amended, 46 U. S. C. § 1128d. The libel was filed on December 22, 1944. On July 25, 1947, Congress passed a Joint Resolution putting an end to a large body of war powers. Among the hundred-odd statutory provisions thus repealed was the War Risk Insurance Act. 61 Stat. 449, 450. On October 4, 1948, determination of damages in advance of trial was referred to a Commissioner; his report was filed on March 23, 1950; it was confirmed (subject to some exceptions) on July 27, 1950, 92 F. Supp. 243; the case was reached for trial on March 6, 1951. The Government for the first time then raised the jurisdictional issue on which this case turns here, namely, whether the District Court had, as of July 25, 1947, been deprived of jurisdiction to retain this suit by the Joint Resolution.

The District Court rejected the Government's contention, holding that § 13 of the Revised Statutes, as amended,* saved the libellant's cause of action from being extinguished by the Joint Resolution of July 25, 1947. The court properly called attention to the fact that § 13, originally § 4 of the Act of February 25, 1871, 16 Stat.

---

*"The repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute, unless the repealing Act shall so expressly provide, and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture, or liability. The expiration of a temporary statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute, unless the temporary statute shall so expressly provide, and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture, or liability."

431, 432, was reenacted, as amended, 58 Stat. 118, as 1 U. S. C. (Supp. I) § 109, 61 Stat. 633, 635, after passage of the Joint Resolution, to wit, on July 30, 1947. 98 F. Supp. 514. However, the Government's view prevailed in the Court of Appeals. That court held that "the district court on July 25, 1947 lost its power to deal further with the litigation." 198 F. 2d 182, 186. The Government recognized the importance of this ruling, and we brought the case here, limiting our grant of certiorari to the question of the jurisdiction of the District Court. 344 U. S. 883.

The precise contention which the Government made in the Court of Appeals, and which prevailed there, goes a long way toward disposing of itself. The Government did not contend that its liability to the petitioner came to an end with the Joint Resolution's repeal of the War Risk Insurance Act. Apart from R. S. § 13, the Constitution precludes extinction of the Government's liability. *Lynch* v. *United States,* 292 U. S. 571. The Government realized that its liability under the War Risk Insurance Act survived the Joint Resolution, but claimed that the mode provided by the Act for its enforcement did not. In this Court, the Government receded even from that position. It here took the academic position of giving the arguments *pro* and *con,* of stating the reasons why R. S. § 13, the General Savings Statute, now 1 U. S. C. (Supp. I) § 109, should be held to govern this situation, and also the reasons why it should be held inapplicable. We find the latter considerations more subtle than persuasive, and conclude that the arguments urged in support of the continuing jurisdiction of district courts to hear causes of action which arose under the War Risk Insurance Act prior to its repeal must prevail.

In dealing with the present problem it is idle to thresh over the old disputation as to when the Government is, and when the Government is not, bound by a statute un-

restricted in its terms. R. S. § 13, as reenacted, lays down a general rule regarding the implications for existing rights of the repeal of the law which created them. It embodies a principle of fair dealing. When the Government has entered upon a conventional commercial endeavor, such as the insurance business, it as much offends standards of fairness for it to violate the principle of R. S. § 13 as for private enterprise to do so.

This brings us to the crux of the contention which prevailed below, namely, that while the Government's obligation as an insurer, which came into being with the sinking of the *Dona Aurora* on December 25, 1942, survived the repeal of the War Risk Insurance Act by the Joint Resolution of 1947, the "liability" could be enforced only in the Court of Claims, not in the District Court. This conclusion is no more substantial than the tenuous bits of legal reasoning of which it is compounded.

By the General Savings Statute Congress did not merely save from extinction a liability incurred under the repealed statute; it saved the statute itself:

> "and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action . . . for the enforcement of such . . . liability."

We see no reason why a careful provision of Congress, keeping a repealed statute alive for a precise purpose, should not be respected when doing so will attain exactly that purpose.

This case demonstrates the concrete, dollars-and-cents importance of saving the statute and not merely the liability. Indeed, in this case the liability under the statute is not wholly saved unless that portion of the statute which gives the District Court jurisdiction also survives. As the Government fairly points out, to deny petitioner the opportunity to enforce its right in admiralty and

to send it to the Court of Claims instead is to diminish substantially the recoverable amount, since in a district court sitting in admiralty interest accrues from the time of filing suit, 46 U. S. C. § 745, while in the Court of Claims interest does not begin to run until the entry of judgment. 28 U. S. C. (Supp. IV) § 2516.

For the Government to acknowledge the liability but to deny the full extent of its enforceability recalls what was said in *The Western Maid,* 257 U. S. 419, 433: "Legal obligations that exist but cannot be enforced are ghosts that are seen in the law but that are elusive to the grasp."

The Government rightly points to the difference between the repeal of statutes solely jurisdictional in their scope and the repeal of statutes which create rights and also prescribe how the rights are to be vindicated. In the latter statutes, "substantive" and "procedural" are not disparate categories; they are fused components of the expression of a policy. When the very purpose of Congress is to take away jurisdiction, of course it does not survive, even as to pending suits, unless expressly reserved. *Ex parte McCardle,* 7 Wall. 506, is the historic illustration of such a withdrawal of jurisdiction, of which less famous but equally clear examples are *Hallowell* v. *Commons,* 239 U. S. 506, and *Bruner* v. *United States,* 343 U. S. 112. If the aim is to destroy a tribunal or to take away cases from it, there is no basis for finding saving exceptions unless they are made explicit. But where the object of Congress was to destroy rights in the future while saving those which have accrued, to strike down enforcing provisions that have special relation to the accrued right and as such are part and parcel of it, is to mutilate that right and hence to defeat rather than further the legislative purpose. The Government acknowledges that there were special considerations, apart from the matter of interest, for giving the insured under

the War Risk Insurance Act access to the district courts rather than relegating him to the Court of Claims. In repealing the War Risk Insurance Act among numerous other statutes, Congress was concerned not with jurisdiction, not with the undesirability of the district courts and the suitability of the Court of Claims as a forum for suits under that Act. It was concerned with terminating war powers after the "shooting war" had terminated.

While the Government took a neutral position in this Court on the survival of the District Court's jurisdiction under the War Risk Insurance Act, it emphatically urged us to hold that, in any event, the repeal of that Act did not extinguish the District Court's jurisdiction to hear this case, sitting in admiralty pursuant to the Suits in Admiralty Act of March 9, 1920, 41 Stat. 525, 46 U. S. C. § 741 *et seq.* Since we have concluded that the District Court was correct in holding that this libel was properly before it under the War Risk Insurance Act, it would be superfluous to consider the applicability of the other statute.

*Reversed.*

MR. JUSTICE DOUGLAS concurs in the result.