**UNITED STATES of America**
v.
**Everett Victor CLAYTON.**
**Civ. A. No. 7961.**

United States District Court
W. D. Louisiana,
Monroe Division.
Oct. 2, 1961.

T. Fitzhugh Wilson, U. S. Atty., and Edward V. Boagni, Asst. U. S. Atty., Shreveport, La., for the Government.

William B. Ragland, Jr., Voelker & Ragland, Lake Providence, La., for defendant.

BEN C. DAWKINS, Jr., Chief Judge.

On August 16, 1960, the government filed this action against defendant, a resident of Lake Providence, Louisiana, alleging that, during the months of November and December of 1957, he committed

six violations of the Civil Aeronautics Act of 1938,[1] as amended, and Civil Air Regulations promulgated by the Civil Aeronautics Board pursuant to that Act. Under the provisions of 49 U.S.C.A. § 621, the government seeks recovery of civil penalties not to exceed $1,000 for each violation, or an aggregate penalty for all six violations not to exceed $6,000.

■ Defendant has filed a motion to dismiss the action for failure to state a claim upon which relief may be granted. This motion presents two issues for consideration, namely:

(1) Did the Federal Aviation Act of 1958,[2] which repealed in part the 1938 Act, operate to destroy the government's right to prosecute a claim for penalties accrued under the Civil Aeronautics Act of 1938 because such penalties were not the subject of proceedings commenced prior to the effective date of the repealing Act; and

(2) Did the Civil Aeronautics Act of 1938 empower the Civil Aeronautics Board to promulgate Civil Air Regulations, the violation of which would render the offender liable for civil penalties prescribed by 49 U.S.C. § 621?

Generally, "[t]he repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute, unless the repealing Act shall so *expressly provide*, and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture, or liability." [3] It follows that the Federal Aviation Act of 1958 will not affect the government's right to proceed in this action unless that Act *expressly* releases or extinguishes the penalties incurred under the Civil Aeronautics Act of 1938 but which were not the subject of pending judicial proceedings on the effective date of the repealing legislation.

The Federal Aviation Act of 1958 contains "saving provisions" for existing rules, regulations, orders, pending administrative and judicial proceedings, personnel, property, appropriations, and members, officers and employees of the administrative board. Title XV, Section 1501(c) provides:

"Pending Judicial Proceedings

"(c) The provisions of this Act shall not affect suits commenced prior to the date on which this section takes effect; and all such suits shall be continued by the successor agency, proceedings therein had, appeals therein taken, and judgments therein rendered, in the same manner and with the same effect as if this Act had not been passed. No suit, action, or other proceeding lawfully commenced by or against any agency or officer of the United States, in relation to the discharge of official duties, shall abate by reason of any transfer of authority, power, or duties from such agency or officer to the Administrator or the Board under the provisions of this Act, but the court, upon motion or supplemental petition filed at any time within twelve months after such transfer, showing the necessity for a survival of such suit, action, or other proceeding to obtain a settlement of the questions involved, may allow the same to be maintained by or against the Administrator or the Board."

This provision, as the subsection expressly provides, regulates the future disposition of "Pending Judicial Proceedings" and does not contemplate either the saving or extinguishment of penalties which were incurred under the repealed legislation but which were not the subject of pending judicial proceedings on the effective date of the 1958 Act. This fact, argues the defendant, clearly shows that Congress intended for all other

---

1. 52 Stat. 973, 49 U.S.C.A. § 401 et seq.

2. Public Law 85–726, approved August 23, 1958, 72 Stat. 806, 49 U.S.C.A. § 1301 et seq.

3. 1 U.S.C. § 109. (Emphasis added.)

rights, liabilities, forfeitures and penalties to be extinguished or released upon the new legislation having become effective.[4]

■ This argument, however, has been disposed of adversely by several Federal District and appellate Courts,[5] including the Fifth Circuit Court of Appeals,[6] and the Supreme Court.[7] It is contrary to the weight of authority, and hence, must fall. It might just as well have been argued, had the situation been reversed, that the failure of Congress to provide for the life or death of previously non-asserted claims clearly evidenced a congressional intent to leave such claims subject to the provisions of general legislation, in this instance, 1 U.S.C. § 109. Such argument would gain support from the fact that the "saving provisions" deal only with procedural aspects and do not affect substantive rights and liabilities.[8] This Court is bound to follow the cited authorities and we now consider defendant's alternative argument.

■ In 1938 Congress passed the Civil Aeronautics Act and thereby recognized the need for a unified, independent aviation agency. The Civil Aeronautics Authority was established, later to become the Civil Aeronautics Board, a body retaining the quasi-legislative and quasi-judicial powers of its predecessor. The remaining powers of the Authority were transferred to the Department of Commerce and became known as the Civil Aeronautics Authority.[9]

Defendant argues that Congress did not empower the Civil Aeronautics Board to promulgate Civil Air Regulations, the violation of which would render the offender liable for civil penalties prescribed by 49 U.S.C.A. § 621, as amended and since repealed.

The general powers and duties of the Civil Aeronautics Board are found in 49 U.S.C.A. § 425 which provides, in part:

"§ 425.  General Powers and duties of the Board

"(a) The Board is empowered to perform such acts, to conduct such investigations, to issue and amend such orders, and to make and amend such general or special rules, regulations, and procedure, pursuant to and consistent with the provisions of this chapter, as it shall deem necessary to carry out such provisions and to exercise and perform its powers and duties under this chapter."

4. This argument has ancient history and is derived from the Latin maxim *Expressio unius est exclusio alterius*, i. e., the mention of one is the exclusion of another or, in other words, when certain things are specified in law, an intention to exclude all others from its operation may be inferred.

5. E. g., United States v. Segelman, D.C. W.D.Pa.1953, 117 F.Supp. 507, affirmed 3 Cir., 1954, 212 F.2d 88; Ex parte Lamar, 2 Cir., 1921, 274 F. 160, 24 A. L.R. 864.

6. Rehberg v. United States, 5 Cir., 1949, 174 F.2d 121; United States v. Carter et al., 5 Cir., 1948, 171 F.2d 530; Bowen v. United States, 5 Cir., 1948, 171 F. 2d 533.

7. Allen v. Grand Central Aircraft Co., 1954, 347 U.S. 535, 74 S.Ct. 745, 98 L.

Ed. 933 (dealing with saving of temporary statutes); De La Rama S.S. Co., Inc. v. United States, 1953, 344 U.S. 386, 73 S.Ct. 381, 97 L.Ed. 422; Fleming v. Mohawk Co., 1947, 331 U.S. 111, 67 S. Ct. 1129, 91 L.Ed. 1375; Hertz v. Woodman, 1910, 218 U.S. 205, 30 S.Ct. 621, 54 L.Ed. 1001; Great Northern Ry. Co. v. United States, 1908, 208 U.S. 452, 453, 28 S.Ct. 313, 52 L.Ed. 567.

8. As noted, Title XV, Section 1501(c) prescribes rules for the continuation of suits by the successor agency, for appeals and judgments under the procedure of the repealed act, for official capacity of displaced officers to continue prosecutions already commenced, and for the survival of such suits.

9. U.S.Code Congressional & Administrative News (1958), Vol. 2, p. 3741 et seq.

The powers of the Board are specifically enumerated as follows:

"Subchapter VI—Civil Aeronautics Safety Regulations

"§ *551. General safety powers and duties of Board; delegation of authority to Administrator*

"(a) The Board is empowered, and it shall be its duty to promote safety of flight in air commerce by prescribing and revising from time to time—

\*   \*   \*   \*   \*   \*

"(6) Such reasonable rules and regulations, or minimum standards, governing other practices, methods, and procedure, as the Board may find necessary to provide adequately for safety in air commerce; and \* \* \*."

Congress provided for enforcement of rules and regulations promulgated by the Board in 49 U.S.C.A. §§ 560, 621:

"§ *560. Prohibitions*

"(a) It shall be unlawful—

\*   \*   \*   \*   \*   \*

"(5) For any person to operate aircraft in air commerce in violation of any other rule, regulation, or certificate of the Board or Administrator of Civil Aeronautics under this subchapter."

Civil penalties are provided as follows:

"Subchapter IX—Penalties

"§ *621. Civil penalties*

"(a) Any person who violates (1) any provision of subchapters V, VI, and VII of this chapter, or any provision of subsection (a) (1) of section 181 of this title, or (2) any rule or regulation issued by the Postmaster General under this chapter, shall be subject to a civil penalty of not to exceed $1,000 for each such violation. Any such penalty may be compromised by the Board or the Postmaster General, as the case may be. The amount of such penalty, when finally determined, or the amount agreed upon in compromise, may be deducted from any sums owing by the United States to the person charged."

Defendant's argument that civil penalties may be imposed only for violations of the express "provisions" of the Civil Aeronautics Act of 1938, as distinguished from the Board's administrative rules and regulations promulgated by authority of that Act, will not withstand scrutiny. Congress expressly conferred rule-making powers upon the Board and provided civil penalties for their violation. As a matter of law, it is not necessary for Congress to formulate each rule and regulation in an area of highly technical action. These duties and responsibilities are placed upon administrative agencies competent to administer in the public interest within their respective spheres of operation. In United States v. Grimaud, 1911, 220 U.S. 506, 31 S.Ct. 480, 483, 55 L.Ed. 563, the Supreme Court observed:

"From the beginning of the government various acts have been passed conferring upon executive officers power to make rules and regulations,—not for the government of their departments, but for administering the laws which did govern. None of these statutes could confer legislative power. But when Congress had legislated and indicated its will, it could give to those who were to act under such general provisions 'power to fill up the details' by the establishment of administrative rules and regulations, the violation of which could be punished by fine or imprisonment fixed by Congress, or by penalties fixed by Congress or measured by the injury done."

In enacting the Civil Aeronautics Act of 1938, Congress did precisely what the Court approved in Grimaud, supra. The relevant provisions of the Act could not have been made clearer or more opposed to the thrust of defendant's argument. Civil penalties were imposed for violations of Civil Air Regulations in United States v. Drumm, D.C.Nev.1944, 55 F.

Supp. 151, and United States v. Hayes, 2 Cir., 1959, 264 F.2d 929.

Moreover, the government has submitted a certified copy of the Civil Air Regulations, with amendments, Part 60, Air Traffic Rules, which were promulgated by the Civil Aeronautics Board, and which are relied upon by the government in its complaint. These sustain the government's position.

Accordingly, defendant's motion to dismiss must be, and is hereby, denied and overruled.